Mr. Clerk, please. Page 103, 18-0202. People of the City of Illinois, as well as parents and families, we present the LaSalle County Appellant by George Mueller v. City of Spring Valley, Spring Valley Police Department and Kevin Stanton, Appellate by William Burnett and City of Ottawa, Appellate by Austin Zimmer and City of LaSalle, Appellate by David Matthews. Mr. Mueller. Thank you. Good afternoon again, Mr. Clerk. Good afternoon again. And please report, counsel. First of all, the county of LaSalle is not seeking to declare the winner. The argument that we made is that the pleading stage was too early in light of the complexity of this case to have knocked us out. All we're asking for is a chance to prove our case. Now, that case is not about the legality of the safe operation. That's been determined. But at the time that these events were taking place, the parties involved presumably believed that the forfeitures were legal and, in fact, those forfeitures were completed and became final. And this case is about what should have happened and what should happen now. The $573,000 that went back to SAFE as a result of the forfeitures that they got on interstate 80. As the court knows and as the briefs explain, SAFE was a group of investigators and a police entity created by the former LaSalle County State's Attorney and operated out of the State's Attorney's office. What's an acronym for what? State's Attorney Felony Enforcement. Okay, thank you. There are two procedural complexities that make this case a little bit unusual. The first is that motions to dismiss automatically carry with them the presumption that the well-pled facts in a plaintiff's complaint are true. But the defendants in this case raised affirmative defenses in their motions, specifically equitable estoppel and latches, which are fact-based defenses and which typically aren't seen at the pleading stage. As a result, Judge Marcellino, in looking at all of this, in essence inferred the existence of additional facts so that he could render a judgment that reads and looks and smells more like a summary judgment than it does like a ruling on 615 or a 619 motion. The second complexity... Now, we have a 2619 where affirmative matters are presented in response to the complaint. That's correct, but their 2619 was not supported by affidavit or any other showing outside of the record. So you're trying to say that the trial judge you said inferred, was he inferring affirmative matter? The trial judge, in his opinions, talked about an agreement between the parties that didn't exist. He talked about the state's attorney generously agreeing in consideration of certain services to give money to Spring Valley. There's no evidence of such an agreement. And the defendants never even alleged that in their motions to dismiss. The defendants did, however, Justice Aldridge, alleged certain facts regarding the degree of Spring Valley's participation and so forth, which Judge Marcellia took as true and established in terms of isolation and ruling. The second complexity in this case is the complete lack of the customary paper trail that one would look to to unravel what the parties were thinking and what their intention was. There is, first of all, no ratification of the only written document we have, the Memorandum of Understanding between State's Attorney Town and Spring Valley Police Chief Sangston, which was the basis of the formation of State. There is no ratification of that document by Spring Valley. There is no ratification by LaSalle County. Then, there is no budgeting or appropriation or other official recognition by the City of Spring Valley with regard to forfeiture money that started coming their way. I mean, the money came and they spent it, but if you look at their minutes, and this is all in the complaint, there's no acknowledgement of it, which makes it incongruous that they now argue that they relied on it and makes it even more incongruous that the trial judge found there was an expressive remit between State's Attorney Town and the City of Spring Valley with regard to the funds. Similarly, there's nothing that the County of LaSalle knew at the time. There's an argument made that LaSalle County could have interjected itself earlier to try to recover these monies, but the pleadings reveal that that money never got on their books. The minute Town got the forfeiture checks back from the State, he forwarded them to Spring Valley. One would think that the proper paper trail might be to deposit the money in some LaSalle County account and then get a check from the Treasurer back to Spring Valley in fulfillment of some agreement. None of that occurred. There is an absence of paper trail here. And I've searched for an explanation, and the best I can come up with is that Ringland, which is obviously well known to this court, was in the trial court, and that controversy existed by early 2012, and all of the players in the safe side  that their actions were to be carried with controversy. And potentially are very problematic as they turned out to be. However, the trial judge and defendants in their motions to dismiss treat this like a conventional contract case when in fact what we're looking at is an informal, off-the-books agreement between government actors. And the law is pretty clear that informal, off-the-books agreements between government actors don't give rise to any of the conventional defenses like equitable staffle, latches, and the like because they're not supported by the usual checks and balances and other requirements for appropriations and for approvals and the like. Now, the big elephant in the room that Judge Marsalia, in his rulings, completely ignored is the fact that Town's actions in transferring $573,000 to Spring Valley were altruistic. They were outside of law. And the basis for that is pretty straightforward. Section 12 of the Cannabis Control Act designates that the agency or agencies responsible for a forfeiture get 65% of the net proceeds of the forfeiture. The determination of where the money goes is made by the state police. And they base their determination on an inventory form filed by the agency itself which sets forth the relative percentage of participation of all agencies involved. In this case, 100% of those inventory forms said that SAFE was solely responsible. Now, once SAFE gets the money, the check has limitations as to how it can be spent for drug enforcement or for security cameras. That's right in the statute. And there are no further transfers allowed by law other than limited sharing as set forth in the statute with municipalities in excess of 20,000 people, a situation that clearly doesn't apply to Spring Valley. So, on the issue, the former state's attorney, Brian Town, had no right to transfer those funds once received to anybody else. If he believes Spring Valley was entitled to some money, that should have been reflected in the inventory forms filed with the state police. The trial court basically disregarded the officer here's argument, but it's controlling in this case because if he didn't have to, if Town didn't have the right to transfer funds, then equitable transfer becomes irrelevant, latches becomes irrelevant. Now, the defendant, Spring Valley, tries an end around with regard to this by arguing that they were actually parts, that they were a fully functioning and participating part. And our response to that argument is, number one, it's not in the trial court's ruling. Number two, if they were a part of state, that seems to contradict the allegations in the complaint which talk about the relative role of all participants. And we're limited to those allegations being deemed as true for purposes of the plea. So, the argument by Spring Valley doesn't seem supported by the pleadings as of right now. Lastly, that kind of argument cries for proof by one side or another. And the trial judge in this case cut LaSalle County off at the knees by saying, you're not going to be entitled to prove your case. I'm going to dismiss this now. And we said, judge, let us perform the discovery to prove what the relative role was. If Spring Valley was part of state, the evidence will bear that out. But in the absence of evidence, the pleadings in the complaint have to be deemed as true. So, that's the central argument here. And in terms of some arguments that flow from that, equitable stockpile, as evidenced in the case relied upon by the trial judge and the defendants, the Midlothian case, is a fact-based doctrine generally applicable after discovery. It does not seem to be applicable in the absence of any indication of an agreement or what that agreement was. And I might add, even implied agreements aren't possible if the conduct that we call the implied agreement is ultra-various conduct. And as to Lanshaw's, nobody has established what the prejudice is to the parties as a result of the state's attorney's delay in bringing the action. Secondly, she acted promptly in bringing this within a few months after she took office. Thirdly, LaSalle County couldn't have done it beforehand because they never knew what was going on in that the $573,000 never got on their books. Counsel, that's two minutes. Thank you. And then the parties, the defendants cite a case, Monson, which says, presumptively, six months is all the time they have before Lanshaw's applies. Monson is a limited holding that talks about budget cases and employment cases. It's not Lanshaw's case and it's applicable in all situations. With regard to unjust enrichment, the plaintiff pled the elements of unjust enrichment and it would appear from the face of the complaint that we win the better right analysis test, which is part of unjust enrichment, although again, that would require proof, which is what we're asking to be allowed to present. Lastly, and I'll close with this, is the concept of reliance raised by all of the parties and mentioned in the trial court's ruling. There are two types of reliance here. The first is the alleged reliance of the parties on representations of town that this was okay. The law is pretty clear that when government deals with government, everybody's responsible for knowing what the law is and that kind of reliance is misplaced. Moreover, if he's acting in an illegal or outside-of-the-law fashion, reliance doesn't create any right on the part of the person that inappropriately relied. Secondly, the parties say, we relied on receiving the money. Well, there's no official action by anybody to say Ottawa or Spring Valley indicated that they even acknowledge receiving the money, let alone relied upon it. And so what they're saying is that the reliance standard they would advocate is if we receive the windfall and spend the money, we shouldn't have to give it back. That's not the concept of detrimental reliance. And for those reasons, we ask that this matter be remanded to the trial court for further proceedings and discussion. Thank you. Mr. Koenig, should we be sharing your time? Yes, Your Honor, I think we've got eight minutes. May it please the Court of Counsel, what we've just heard is we've heard the law according to Mr. Mueller. Comments that he made about what the law is is not supported by any case law that he set forth in the brief. And in fact, there is no case law to support his position as an example where he says we're an act as ultraviolence, therefore doctrines of equitable gestapo don't apply, and therefore latches doesn't apply. And so your Honor's question regarding us proceeding under Section 2-619 as it relates to the issues of equitable gestapo and the issue of latches, 2-619 expressly provides if we're raising affirmative manner and if it does not appear on the basis of complaint, you have to support it with an affidavit. It is our position that the application of equitable gestapo, that the application of latches appears on the basis of complaint. With respect to the sufficiency of the complaint pledging under Unjustice of Enrichment, alleging a claim, no one has effectively said. This Court has made an observation in one case that I really don't recall the name of it. 2-615 is not a... You have to allege sufficient facts in this case as it relates to the claim of Unjustice of Enrichment. You've got to allege sufficient facts to come within the Supreme Court decision of HPI to state a claim. We address in our brief this comment about when Judge Marsaglia assumed an agreement. We've addressed in our brief what the judge meant. The judge was just using that as a shorthand term for the conduct of a cop in giving us the money, in us spending the money, in us giving $200,000 money away to other participants in the safety, in the city of La Salle, in the city of Ottawa. If that's not prejudice, I don't know what is. He claims that the city did not, the city of Springfield did not ratify the agreement. I guess my question is, so? How does he tie that in to the circumstances of this case? One can plead yourself out of court, and that's what we maintain if he says it relates to the application of the doctrines of equitable estoppel. When a local public entity deals with a state, deals with the highest elected legal official in a county, particularly in matters relating to his bailiwick, in this case the criminal matters, they're entitled to rely on that agreement and believe it's equitable, and believe it's legal. When you deal with the state's attorney, in this case, you're dealing with a public official. It's reasonable to expect that public official to live behind his handshake, to live behind unspread, unexpressed agreements, to not hide himself behind a written contract, but to do what's right and fair. And that's what we're asking in this case, for this court to affirm the trial court, and do what's right and do what's fair. We should not, as Judge Marsalio pointed out, what we have here is a change in office holder. We dealt with the office of state's attorney simply because we have a change in office holder who for some reason has a change in mind and does not want to live up to what her predecessor did in this case. The consequences of that should not fall upon the city of Spring Valley or any of the other public entities that dealt with the state's attorney in good faith. There is absolutely no allegation of fact to suggest otherwise, to suggest that we did not do it in good faith. Regarding the issue of detrimental reliance, the city performed its side of the deal under the agreement. The city performed for three years and supplied one of its officers on behalf of our client. It paid that officer's salary. The officer was considered the chief deputy. Jock was considered the chief deputy of the state. He processed and dealt with the Illinois State Police as it related to forfeiture of funds. Money was given to the city directly by Tom, not mistakenly. No strings were attached. He gave us that money over a three-year period. We, in turn, took that money and gave $200,000 of it to our co-dependents in this case. Nobody addressed any other arguments. Money wasn't held for personal gain. That is the prejudice that has been sustained by the city. The city's books are closed. The city's budget is completed. The city's appropriations have been done for over two years. What he's asking this court to do is have the burden of what Tom did in this case, and simply because there's a change in office holder, to have the consequences of that conduct visited upon the citizens of Spring Valley and have us budget to half a million dollars to pay back the money in this case. That is a prejudice, and that's the type of prejudice that the court found was sufficient in the Monson case, sufficient to support the application of the latches. The county could have brought this case right after the appellate court decision in Ringwood and called into question the legality of the safety limit. They did not do so. In the Monson case, they addressed that specific issue in the context of latches, saying that your lack of diligence is not going to mitigate the issue of the applicability of latches in this case. And latches certainly had its genesis in forced employment cases, but as the Monson case was, the Monson case dealt with somebody saying, we didn't appropriate money appropriately, and we would be out of luck if you come out or you're allowed to come out and say, gee, you misspoke, and you really should have been giving us more money. That's the type of prejudice that we sustain in this case. The concepts of equity and fairness and justice between state and the office of state's attorney should be limited, not simply because of manpower change in office holding. Those concepts underlie the issues which are raised in this case. The concept of unjust enrichment is fairness. The concept of equitable estoppel is fairness, and the concept of latches is fairness. Gettys, the Illinois Supreme Court case, dealt with the applicability of equitable estoppel. There was simply in that case nothing more than a change in mind than a part of the claimant. Gettys says, yeah, you can put your call force over here, and after they put it there, he said, gee, I don't want it there anymore. The court said, based upon your representation and allowing them to build that office up, the golf course there, based upon that reputation, coupled with the fact that they're going to sustain damages if they have to move it, that's enough. That's enough to give rise to an equitable estoppel. Simple change in mind. As it relates to the unjust enrichment, none of the elements are satisfied in this case. There's been no mistake in giving us the money, which is the first circumstance under which the doctrine would apply. There is no fraud or illegality on our part, at least, which is the second circumstance under which it should apply. And thirdly, is the county entitled, more entitled to the money than in Spring Valley? If you put all those things in a scale of injustice, what do we have on the city's side? We have all those factors that I've enumerated, which is the prejudice to the city. Can you speak to the standing issue as well? My co-counsel is going to be raising the standing issue, but if you look at our brief, I simply said I adopted it. I didn't want to... If that's said, if there's no further questions, your Honor, I will deal with that. I guess not. Thank you, Mr. Curran. Mr. Matthews. Good afternoon, and may it please the Court. I'm David Matthews, and I represent the city of La Salle. Counsel, for my part, I'm going to mention the law. And what should not get lost on this Court is that the suit that the plaintiffs are bringing is unprecedented in the most literal sense of the word. Nowhere in either round of briefing of trial court, nowhere in either of their appellate briefs do they point to one single case anywhere in the country or any sort of suit to recover funds over disputed asset forfeitures. If, you know, one could argue a safe unit, for better or for worse, is a one-off, but surely somewhere in the country, somewhere, there is a dispute over how to divide an asset forfeiture. The plaintiffs point to no such case. It is important to underscore the unprecedented nature of the ruling they're asking, and they certainly haven't done enough to get that kind of unprecedented relief. In my limited time, I'd like to address three independent reasons why Judge Marsaglia's opinion should stand as to La Salle. I'll call in conduct, cause of action, and construction of a statute, which is part of the proceeding issue that you're honoring. What's your understanding as to why the county wants to, for lack of a better term, disgorge these disbursements? Judge, my... I would assume, you know, I'm not privy to the county. I don't represent that. They may just want the money. That's a good old-fashioned motivation. They may have other side benefits they may see in terms of discovery of other cases. To indemnify against future liability? I wouldn't rule that out, but, again, that would just be expected That might be a reason there's no other suit around. Judge, that would be speculation. Of course it would be. From my client's perspective, I'm not sure that what their motivations are. From my client's perspective, at least it takes a back seat. For litigating this case, they're going to finance it upon their own. Maybe the county can speak to that. I don't think I can. As to the conduct point, I'll be very brief. That is, that all of the discussion about agreements and whether they were or were not ratified is ultimately irrelevant. Counsel, there's one minute. Latches, deals, and equitable or solid deals with conduct. Second as to the cause of action, it's telling that it's only at the very end of their brief that you can get to unjust enrichment, which is the only claim they raised. And only at the end of their argument can they get to unjust enrichment. It's not enough to say something is fishy about Bryan Town or we have a general grievance or we have a records gap. Something is fishy. You need to have a recognized cause of action, which they don't. Nowhere in their brief do they explain why any of these elements of equitable estoppel apply as to the city of LeSac. It's all directed to Spring Valley. And finally, as to construction of the statute, this is an argument they ignored at the trial court. They ignored it in their opening brief in an argument that was waived. And in response, the only thing they say is, well, law enforcement agency includes the municipality that oversees the law enforcement agency. In which case, the question becomes, what's the law enforcement agency that they're overseeing? It can't be the state attorney's office because they are already a separate part of their construction. It can't be state. State no longer exists. It can't be the sheriff's office. So even if one overlooks their waiver, they still haven't adequately responded. And I'm running out of time. So unless anyone has any questions, I will sit down. Okay. Thank you, Mr. Mather. Mr. Zimmer? May it please the court, counsel. My name is Austin Zimmer. I represent the city of Occoquan. The trial court promptly recognized that the second amendment complaint fails to allege any specifics regarding improper actions by the city of Occoquan. There is no need for this case to proceed to any discovery because there's not a case that it can prove. And to get to your point, Justice Lynn, about standing, I'd like to answer that question for you right now. There's no standing that the plaintiff has to bring this case inside. As this court is well aware, standing requires the plaintiff to have an injury that's fairly traceable to the defendant's actions and likely to be redressed by the request of relief. Recovery should not be permitted unless the plaintiff has sustained an injury. Here, the plaintiff, the state's attorney, has suffered no injury. There's no clear line showing a declaration of rights belonging to State's Attorney Donnelly, Arvin County, when Ottawa accepted the money from Spring Valley. Even if the sharing of the money was improper, that does not explain how the funds should now be rerouted back to the state's attorney's office. That same office has already received their share of the money from the forfeiture, their 12.5% that's permitted by law. Plaintiff's complaint and brief does not address these arguments, does not explain at all why they should get this money. And even if this court were to find that there was standing, the unjust enrichment claim cannot be brought against the City of Ottawa. Plaintiff's brief fails to demonstrate how they have pled a proper claim for unjust enrichment against Ottawa. There were not any well-pled facts against Ottawa. Plaintiff did not allege that Spring Valley should have given the money to the county and mistakenly given it to Ottawa. They didn't plead it because they can't plead it. Plaintiff did not and cannot plead that Ottawa received the funds through any wrongful conduct. And Plaintiff cannot establish that the county has a better claim to the funds than Ottawa. They can't do these things because the county is not a law-enforcing agency that is entitled to those funds under the Kennedy's Control Act. The county did not participate in the investigations. As my co-counsel mentioned, Latches clearly precludes the assertion of these claims. As the trial court recognized, the state's jury waited some five to six years before they tried to recover the funds at issue. Ottawa, like the other defendants, is prejudiced by this unreasonable delay and clearly five to six years brings to is an unreasonable delay. Further, Ottawa reasonably relied on Mr. Tyler's actions as the South County State's Attorney. And as the judge below pointed out, a change in the leadership of the State's Attorney's Office does not allow the State's Attorney's Office to change their position regarding Ottawa's possessory rights to the money. Ottawa reasonably relied on the South County State's Attorney's Office and years later they should not be able to change their position. In conclusion, the state's first complaint does not and cannot explain how they have standing to bring this claim and how they are entitled to the forfeiture funds and how that entitlement is superior to Ottawa. Illinois law does not allow plaintiffs to plead complaints for liability without explaining the theory under which it occurred. Respectfully, we request that this court affirm the decision of the circuit court. Thank you. Thank you, Mr. Zimmer. Mr. Muir, please return. Thank you. With all respect, Your Honors, nobody waited five or six years to try to recover this money. Ms. Donnelly waited five to six months, during which time there were ongoing discussions. But you don't dispute that they had the money. Pardon me? You don't dispute that the municipalities had the money and the police department for five or six years. They received it that length of time. Well, actually, that money came in over a period of years. It ended in mid-2015. And if the money... I mean, can you address the standing argument? How is it that... I certainly intend to do that. The parties seem to feel that Bryant Town had standing to give them the money, but Karen Donnelly, who was his successor in office, does not have standing to try to get it back. That doesn't make any sense to me. Moreover, SAFE was a part of the State's Attorney's Office. That's clear from the documents forming SAFE and from its name, State's Attorney County Enforcement. Additionally, the State's Attorney's Office is part of LaSalle County, and all of the arrests and all of the forfeitures took place in LaSalle County, not in Spring Valley. So, therefore, clearly, Ms. Donnelly, the State's Attorney in LaSalle County, has standing. Now, the other argument that they want to make is that equitable estoppel applies to the agreement. And I think Counsel for Spring Valley said, we lived up to our end of the agreement. To which our question is, what agreement are you talking about? The agreement that Judge Varsalia inferred in the absence of pleadings existed? Because there's certainly no paper trail evidencing any such agreement. So I don't know what they lived up to. I don't know what the terms of it are. No one does, but Spring Valley seems to always say, we lived up to our terms. And as to Ottawa and LaSalle, they acquired no greater right, Your Honor, than Spring Valley had. Our cause of action against them is derivative. Ottawa gets a check. There's no letter. There's no paper trail. Didn't somebody wonder, why are we getting this? What did we do to deserve this? Is it okay to spend this? That's the kind of questions that should have been asked in this county and weren't. But under the forfeiture statute, the county itself is not a law enforcement agency, is it? Actually, the forfeiture statute talks about county law enforcement agencies, municipal agencies. It implies that the law enforcement agency is part of the larger governmental unit that it is connected to. I mean, nobody would argue that the Sheriff's Department is part of LaSalle County. Right, and the statute says if the Sheriff's Department participated, if a Sheriff's Department county law enforcement participated, that they could receive some of the funds, as does the State's Attorney's Office, and I think they got, what, 12.5%? No. But where does it say that the county itself, as a body politic, is entitled to any of these funds under any circumstances? The county now is attempting to recover money that should have been in the State's Attorney's possession and control in the first place, and the money that comes into the State's Attorney's Office goes into county funds. That all becomes subject to various number of funds under the auditor's regulation. Now, one of the comments that was made here was, well, in fairness, you shouldn't take the money away from us. And the argument is, it's unfair to ask us for the money back. What's unfair is that LaSalle County, which doesn't have the $573,000, is on point as a defendant against all of the individuals seeking to get their forfeiture money back, which we don't have the money to give them, because it was given to Spring Valley, where none of the arrests occurred, and then Spring Valley chose to send some of it over to Ottawa and LaSalle. So fairness clearly weighs on the side of LaSalle County. They want to keep the benefit, but they don't want to share the risk. So for those reasons, we ask that this matter be remanded to the trial court for further proceedings to see who's equitably entitled. As of proceedings now, the better right test seems to favor LaSalle County. Thank you, Mr. Muriel. Thank you. Thank you all for your argument today. The verdict of this matter under five minutes. The bench was a written disposition, my dear sir. It took a lot of time.